

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0819-12

**ROBERT RANDALL KRAUSE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

**ALCALA, J.,** filed a concurring opinion.

### CONCURRING OPINION

I join the majority opinion. I agree that this Court must reverse the judgment of the

court of appeals and remand the case of Robert Randall Krause, appellant. I write separately,

however, to explain (1) why statutory provisions outside of the Transportation Code should

not apply in deciding the meaning of a term used within the Transportation Code, and (2)

why I believe that the better practice for this Court would be to clearly set forth a more black-

and-white rule that would be more understandable for police officers and trial courts with

respect to phlebotomists.

## I. Comparison of Transportation Code and Health and Safety Code

It is clear that Rachel Lopez, the person who drew appellant's blood, was a "qualified technician" within the ordinary meaning of that term. She was hired by the hospital where she had worked for six years and where her duties were limited to drawing blood. She drew 50 to 100 blood samples each day there. She had also completed one semester of coursework at San Jacinto College North, a local community college. This coursework, combined with her practical experience at the hospital, qualified Lopez to conduct a variety of medical procedures, including blood draws, cardiopulmonary resuscitation, electrocardiograms, intravenous therapy, intubation, and tracheotomies. It would seem irrational to say that she was a not "qualified technician" as that term is ordinarily understood.

The disposition of this appeal rests on the Legislature's intent to exclude someone like her from drawing blood when she was acting as "emergency medical services personnel." *See* TEX. TRANSP. CODE § 724.017. Section 724.017 of the Texas Transportation Code states, "Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen . . . ." *Id*. It also provides that "qualified technician" does not include "emergency medical services personnel." *Id*. "Emergency medical services personnel" is not defined in the Transportation Code. *See id*. That term is defined, however, in the Texas Health and Safety Code, which states, "In this chapter: . . . '[e]mergency medical services personnel' means: . . . emergency medical

technicians–intermediate," which we refer to as "EMT-I." TEX. HEALTH & SAFETY CODE § 773.003(10)(C). If the definition in the Texas Health and Safety Code applies to the Transportation Code, then Lopez must be deemed unqualified. If that definition does not apply, then this Court must determine what the term "emergency medical services personnel" does mean. *See* TEX. TRANSP. CODE § 724.017. I conclude that the definition of EMT-I plainly does not apply to the Transportation Code because it expressly applies only to that term as used "in this chapter" of the Health and Safety Code, and nothing in Section 724.017 of the Transportation Code incorporates that definition. *See* TEX. HEALTH & SAFETY CODE § 773.003(10)(C); TEX. TRANSP. CODE § 724.017.

Furthermore, it does not appear that the Legislature would have intended that the EMT-I definition apply to Lopez's employment with the hospital because the EMT-I license applies to emergency pre-hospital care, and she was not employed or functioning in that capacity when she drew appellant's blood during the course of her employment at the hospital. The Texas Health and Safety Code sets forth the qualifications for an EMT-I as follows:

> An individual qualifies as an emergency medical technician-intermediate if the individual is certified by the department as minimally proficient to provide emergency prehospital care by initiating under medical supervision certain procedures, including intravenous therapy and endotracheal or esophageal intubation.

TEX. HEALTH & SAFETY CODE § 773.048. The EMT-I license, therefore, indicates that Lopez had met the minimal qualifications to be proficient in "emergency prehospital care." *Id*. Her

employment inside the hospital, however, was not as "emergency prehospital care." She was in the hospital's emergency room and not "prehospital." Her license, therefore, qualifies her to perform certain procedures that are performed during "emergency prehospital care," but it does not speak to whether, when she drew appellant's blood, she was acting in the capacity of "emergency medical services personnel" under the Transportation Code. *See* TEX. TRANSP. CODE § 724.017. If we were to conclude that her license as an EMT-I forever made her "emergency medical services personnel" as that term is used under the Transportation Code, it would permanently exclude her from performing those services, despite her qualifications and regardless of whether she was in an emergency setting, like an ambulance, or a non-emergency setting, like a doctor's office. Her license, therefore, provides a basis only to conclude that Lopez has met some minimum qualifications and not that she was acting as "emergency medical services personnel" when she drew appellant's blood. I conclude that the type of license held by the person drawing a defendant's blood does not resolve the question whether the person was "emergency medical services personnel."

## II. Black-and-White Rule for Blood Draws Is Preferable

I join the majority opinion to the extent that it holds that Lopez "did not function as emergency services personnel" because what she "*actually did* at the hospital" was "almost exclusively drawing blood," and, from the perspective of the hospital, she was not treated as "emergency medical services personnel." But I would go even further and expressly hold that, in examining the functions of the phlebotomist, (1) evidence of blood draws taken in

a pre-hospital, non-office settings will not, in general, be permitted because individuals in those settings typically are firefighters or ambulance workers who are "emergency medical services personnel," and (2) blood draws in hospital-office settings, like those typically conducted by Lopez unless she was called to another location, are generally favored because they occur outside of the emergency room in rooms specially designated for the specific purpose of drawing blood by the phlebotomist of the hospital. I would also caution police officers and trial courts that it is unclear whether someone who is employed by the hospital in one capacity, like Lopez who is the phlebotomist assigned to draw blood, may become "emergency medical services personnel" if she is providing emergency services. Here, according to the trial court's findings of fact and conclusions of law, Lopez had "duties in the LBJ Hospital emergency room," as well as duties outside of the emergency room. It is not difficult to envision a time when she would be functioning as part of the hospital's "emergency medical services personnel" who are providing emergency care to patients. In my view, the majority opinion leaves unanswered the question of whether, in examining the functions of an employee, a court must also consider what the employee was actually doing when the officer asked for the blood draw. Here, nothing in the record suggests that Lopez was providing emergency services or even that the blood draw occurred in the emergency room. In this case, she was clearly functioning in a non-emergency situation, and the record suggests that the blood draw occurred outside of the hospital's emergency room. Because of the potential difficulty this Court may face in attempting to characterize the function of a

phlebotomist who is drawing blood in an emergency room, the better practice would be for blood draws to occur in an office within the hospital rather than in the emergency room.

With these comments, I join the majority opinion.

Alcala, J.

Filed:  May 8, 2013

Publish